IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE LISBOA, | ) | CASE NO.: 1:07 CV 707 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| ROGER KLEINMAN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | <u>MEMORANDUM OPINION</u> |
| | ) | <u>AND ORDER</u> |
| | ) | |

This matter is currently before the Court on three separate Motions to Dismiss.  The first, filed by Defendants Roger Kleinman and McDonald Hopkins Co., L.P.A., seeks the dismissal of claims I, III, V, VII, IX, X, XI and XII of the Plaintiff's First Amended Complaint.  (ECF # 16). Defendants, Kimberly Lisboa and Sharon Arslanian both join in that Motion and have additionally filed their own motions to dismiss the remaining claims.  (ECF # 20, 21).  The issues have been fully briefed by all parties and the case is now ready for disposition.    After careful consideration of the briefs and a review of all relevant authority, Defendants' Motions to Dismiss are GRANTED, and Plaintiff's First Amended Complaint ("Complaint") is hereby dismissed with prejudice.

## STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds for the entitlement to relief, which requires more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see also, Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 127 S. Ct. at 1974. "If, on a motion for judgment on the pleadings, matters outside the pleadings are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable

-2-

opportunity to present all material made pertinent to such a motion by Rule 56." Fed. Civ. R.

12(b).    There are some exceptions to this rule, however.  For example, matters of public record,

judicial orders, items appearing in the record of the case, and exhibits attached to the complaint

may also be taken into account.  *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

This includes information obtained from state court proceedings.  *See*, *Scarso v. Cuyahoga*

*County Dept. Of Human Services*, 1990 U.S. App. LEXIS 19728 (6th Cir. 1990), citing *Rodic v.*

*Thistledown Racing Club, Inc*., 615 F.2d 736 (6th Cir. 1980).  Courts may also consider extrinsic

materials which "merely fill in the contours and details" and which add nothing new, without

converting a motion to dismiss to one for summary judgment.  *Yeary v. Goodwill Indus.-*

*Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).    In this action, Defendants Mr. Kleinman and

McDonald Hopkins have requested that this Court take judicial notice of the records of the

Cuyahoga County Court of Common Pleas, Case Nos. CR-04-451451 and 06CV597010.

Plaintiff offered no objection to this request and it is therefore, granted.


### FACTUAL AND LEGAL OVERVIEW[1]

In March of 2002, Defendant, Kimberly Lisboa filed for divorce from her husband, Jose

---

[1]

 Most of the facts stated in this Memorandum and Order are taken from the Plaintiff's
First Amended Complaint and should not be construed as findings of this Court.  In a
motion to dismiss, the Court is obligated, for the purposes of that motion, to accept as true
the facts set forth by the non-moving party, in this case, the Plaintiff.  In order to properly
address Defendants' claims of res judicata, however,  this Court has also taken facts from
prior related judicial proceedings.  Where the allegations in Mr. Lisboa's Complaint
contradict facts that are apparent from the prior judicial record, this Court adopts the
established facts from the record.

Lisboa (Plaintiff).[2]  (Complaint ¶ 10).  Defendant Roger Kleinman, a partner/employee of the Defendant law firm, McDonald Hopkins LLC, was Mrs. Lisboa's attorney for the divorce proceedings and represented her on other business matters .  (Complaint ¶¶ 13, 14, 16, 88 ).

Mr. Lisboa claims that, in order to gain an advantage in the divorce and take over his business, his ex-wife Kimberly set him up to be charged with a crime and deported from the country.  He alleges that Kimberly paid two men, Cliff Vodicka and Bill Wilson to entice him "to engage others to commit a crime against [her]." (Complaint ¶¶ 42-53, 102-106, 111).  Mr. Lisboa claims that Mr. Wilson tried to convince him that he should hire Wilson to "plant drugs in Kimberly's car and harm [Daniel] Oliver," a friend of Kimberly's.  (Complaint ¶ 54-56).  Mr. Lisboa also alleges that Kimberly's lawyer, Mr. Kleinman, conspired with her in the conception, arrangement and implementation of this attempted "set up."  (Complaint ¶ 53).

On April 29, 2004, Mr. Lisboa agreed to meet with Mr. Wilson and another man who turned out to be undercover police officer, Sergeant Dan Michalowsky.   (Complaint ¶59-62).  Mr. Wilson was wearing a wire to record the conversation at the meeting and Sergeant Michalowsky arranged for photographic surveillance.  (Complaint ¶63, 66).  Mr. Lisboa claims that he shunned Mr. Wilson's efforts to convince him to frame Kimberly for drug possession and to harm Mr. Oliver.  (Complaint §56).  He alleges that during the meeting he was intimidated and coerced by Sergeant Michalowsky into giving him his Rolex watch so that it would appear that he had given something of value in furtherance of the plot to harm Kimberly and Mr. Oliver.  (Complaint ¶¶ 67-69).  He further claims that after leaving the meeting, he called Mr. Wilson to

---

[2]

  Later in the Complaint, Mr. Lisboa claims that he filed for divorce from Kimberly on October 3, 2003.

-4-

tell him he wanted nothing to do with the plan, and that he wanted his watch returned to him. (Complaint ¶77).

Based on the above mentioned meeting, Mr. Lisboa was indicted on charges of conspiracy to commit felonious assault, conspiracy to possess cocaine, and possession of criminal tools. *The State of Ohio v. Jose Lisboa*, Cuyahoga County Court of Common Pleas, Case No. CR-04-451451. (Def. Kleinman Motion to Dismiss Ex. A-1: Indictment).  On September 3, 2004, Mr. Lisboa filed a Motion to Dismiss the criminal indictment.  (Def. Kleinman Motion to Dismiss Ex. A-2: Motion to Dismiss Indictment).  The Motion to Dismiss raised the affirmative defense of abandonment and set forth the same claims of conspiracy and "set up" that are raised in the instant action.  (Id.).  On September 24, 2004, Jose Lisboa abandoned his defense and his Motion to Dismiss and pled guilty to amended charges of aggravated assault and domestic violence.  (Complaint ¶ 4).  Under the terms of the plea agreement, Mr. Lisboa received a community control sanction with no jail time, and he agreed to voluntarily leave the country and to not apply for re-entry for at least ten years.  (Def. Kleinman Motion to Dismiss Ex. A-3: Plea Agreement).  Mr. Lisboa claims that he would not have pled guilty to the charges if Kimberly Lisboa and Mr. Kleinman had not misrepresented or withheld facts from the police and from the court. (Complaint ¶¶ 130, 137).

Mr. Lisboa did not appeal his conviction.  Eighteen months after his guilty plea, however, he filed a motion to withdraw his guilty plea and vacate the judgment against him.  (Def. Kleinman Motion to Dismiss Ex A-5: Motion to Vacate Judgment and Allow Withdrawal of Plea).  In support of this motion, Mr. Lisboa offered an affidavit from Bill Wilson which is substantially similar to the affidavit attached to the First Amended Complaint in this action.  A

-5-

few months later, Mr. Lisboa filed a Motion for Post-Conviction Relief which was also supported by a statement from Bill Wilson.  (Def. Kleinman Motion to Dismiss Ex. A-6: Motion for Post-Conviction Relief).  After holding a hearing on the matter, and reviewing all of the evidence in the record, Judge McCafferty of the Cuyahoga County Court of Common Pleas adopted the State's Proposed Findings of Fact and Conclusions of Law, and denied both of Mr. Lisboa's motions for relief.  (Def. Kleinman Motion to Dismiss Ex. A-8: Judge McCafferty's Order and Ex. A-9: State's Findings of Fact and Conclusions of Law).

In February of 2005, Mr. Lisboa, Kimberly Lisboa, Mrs. Arslanian and several others entered into a settlement agreement in the course of the Lisboa's divorce proceedings.  In this settlement the Lisboas and their immediate family members all released each other from "all rights, claims, demands, and causes of action each now has or each may have arising out of their marriage and/or otherwise arising or resulting from any other matter, act, agreement or cause whatsoever occurring prior to the date of the execution of this Agreement by each party."

Mr. Lisboa was deported from the United States on June 17, 2005.  (Complaint ¶ 5). He claims that his deportation was caused by Kimberly Lisboa, her mother, Sharon Arslanian, and Mr. Kleinman's efforts to malign him. Mr. Lisboa claims that Sharon Arslanian communicated with Congressman Steve LaTourette, telling him about unsubstantiated complaints of domestic violence filed by Kimberly and otherwise campaigning for Jose's deportation.  (Complaint ¶ 27, 29, 30, 93, 161).  He also claims that Kimberly misrepresented facts about alleged domestic violence to the prosecutor to mislead him and the INS, and that Mr. Kleinman also concealed information from law enforcement and the INS. (Complaint §124, 131, 140).

**ANALYSIS**

The Defendants contend that Mr. Lisboa's claims are barred by *res judicata*.  Specifically they argue that each of his claims relies on the premise that he is innocent of the crimes he pled guilty to in September of 2004, and that because he pled guilty, he is collaterally estopped from arguing his innocence now.  Further, the Defendants argue that the essential facts set forth in Mr. Lisboa's Complaint were known to him prior to his plea and that his claims are now barred because he could have raised these issues at trial or on direct appeal.  In addition, they claim that Mr. Lisboa did, in fact, raise these issues in prior litigation in the form of a Motion to Dismiss the Indictment in his criminal case, a Motion to Vacate Judgment and Allow Withdrawal of Plea, and a Motion for Post-Conviction Relief.  Defendants also argue that even if Mr. Lisboa's claims were not barred under the doctrine of collateral estoppel, the facts set forth in the Complaint do not create any legally cognizable claims.

Mr. Lisboa argues that his civil claims are not barred by res judicata because they were not actually and necessarily litigated in Lisboa's post-conviction relief proceedings, and they do not have the requisite similarity of facts or similarity of subject matter to his prior proceedings as required by Ohio law.[3]  He further argues that when the allegations in the Complaint are accepted as true, each element of each cause of action in the Complaint is pled with sufficient particularity to state a claim upon which relief can be granted.

---

[3]

Mr. Lisboa also argues that the elements of claim preclusion cannot be met in this case. This is true; however, the Defendants do not argue that claim preclusion applies.  *Res judicata* or collateral estoppel is argued based on a theory of issue preclusion, not on a theory of claim preclusion.  The elements of issue preclusion are discussed in more detail below.

## **A.  Res Judicata**

Res judicata is a bar to litigation which encompasses two related doctrines: claim preclusion and issue preclusion.  Issue preclusion is often referred to as collateral estoppel.  Collateral estoppel generally precludes parties from re-litigating facts and issues that (1) were actually and directly litigated in a prior action, (2) were decided by a court of competent jurisdiction, when (3) the party against whom collateral estoppel is asserted was a party to the prior action.  *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994).[4]  The Ohio Supreme Court has expanded the doctrine of collateral estoppel when the prior action resulted in a criminal conviction.  That Court has held that "a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised *or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction, or an appeal from that judgment."  *State v. Perry*, 226 N.E.2d 104, paragraph nine of the syllabus (Ohio 1967)(emphasis added).

This prohibition applies equally to convictions obtained by guilty plea.  *See McLoughlin v. Sword*, 1993 Ohio App. LEXIS 5931, at *4-5 (Madison Cty. Dec. 13, 1993); *Wloszek v. Weston, Hurd, Fallon, Paisley & Howley, LLP*, 2004 Ohio App. LEXIS 119, at ¶39 (Cuyahoga Cty. Jan 15, 2004); *Mitchell v. Mutual Life Insurance Company*, 1997 U.S. App. LEXIS 30416, *4 (6th Cir. 1997)(a guilty plea may be used to establish issue preclusion in a subsequent civil suit).  Thus, a plaintiff, once convicted, by plea or by jury trial, may not later litigate facts that

---

[4]  A federal district court sitting in diversity applies state law to the substantive issues in the case.  In this instance, Ohio law applies.

-8-

could have provided a possible defense to that conviction, even if he failed to raise the defense in the criminal case.  *See Id.*  " [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann v. Richardson* (1970), 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763]." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also*, *Ohio v. Spates*, 64 Ohio St.3d 269, 272 (1992).

The doctrine of collateral estoppel also applies to post-conviction proceedings.  Thus, a party who unsuccessfully litigates facts and issues necessary to a decision on a petition for post-conviction relief may not later raise claims based on the same facts and issues in a civil action for damages.  *See, e.g., Krahn v. Kinney,* 538 N.E.2d 1118, 1124 (Ohio 1987); *Wright v. Portnoy*, 2007 Ohio App. LEXIS 522 (6th Dist. Feb. 9, 2007); *Houser v. Pond*, 2004 Ohio App. LEXIS 4170 (9th Dist. Sept. 1, 2004); *Wilson v. Britz & Zemmelman*, 1992 Ohio App. LEXIS 84 (6th Dist. Jan. 10, 1992).

In Mr. Lisboa's criminal case, he pled guilty to and was convicted of one count of aggravated assault (O.R.C. §2903.12 - a felony of the fourth degree) against Daniel Oliver, and one count of domestic violence (O.R.C. §2919.25 - a misdemeanor of the first degree) against Kimberly Lisboa.  The transcript of the plea hearing clearly shows that Mr. Lisboa was fully informed of his rights, and that he entered the plea voluntarily, knowingly, and of his own free will.  (Def. Kleinman Motion to Dismiss, Ex. A-5: Motion to Vacate Judgment, Ex. A, C, E).

Under the principles outlined above, any facts or issues that could have been raised as a defense to the charges in the underlying criminal case, or on direct appeal, cannot be re-litigated in this action; nor can any facts or issues that were necessarily decided in his post-conviction proceedings.

All of Mr. Lisboa's claims relating to his "set-up" could have been raised, either as a defense to the original charges, or on direct appeal, including but not limited to (1) the allegation that his ex-wife paid Bill Wilson to entrap Mr. Lisboa and to tape record him, (2) the allegation that Mr. Lisboa refused to agree to harm Kimberly or Mr. Oliver, (3) the allegation that Mr. Lisboa abandoned any plan to harm Kimberly or Mr. Oliver, (4) the allegation that Kimberly, her attorney, or other  witnesses lied or withheld information from authorities during the criminal proceedings, and (5) the allegation that but for the actions of these defendants, Mr. Lisboa would not have pled guilty to the reduced charges.

In his Complaint, Mr. Lisboa alleges that he did not know that Wilson and Vodicka had conspired with Kimberly to set him up until after he had been deported.  (Complaint ¶57). However, the alleged conspiracy and the facts giving rise to that claim were known by Mr. Lisboa at least as early as September 3, 2004, before he pled guilty to the crimes for which he was later deported.  On that date, Mr. Lisboa filed a motion to dismiss the indictment which referred to the alleged conspiracy and entrapment and which asserted his defense of abandonment.  (Def. Kleinman Motion to Dismiss, Ex. A-2: Motion to Dismiss Indictment).   In addition, Mr. Lisboa, would have certainly known whether or not he actually agreed to harm Mr. Oliver or his wife; would have known whether Kimberly Lisboa or her attorney had lied to authorities or during deposition; and would have known his own motivations for pleading guilty

-10-

to the reduced charges in the plea agreement prior to entering his guilty plea.

Each of these allegations could have been raised in defense to the criminal charges brought against Mr. Lisboa, and any claims which support his contention that his plea was not voluntary could have been raised on direct appeal.  Mr. Lisboa abandoned these defenses in order to plead guilty to reduced charges, and he did not choose to file a direct appeal of his conviction.  Therefore, the facts and issues underlying his claims for conspiracy, abuse of process, fraud, intentional infliction of emotional distress (as against Kimberly Lisboa and Mr. Kleinman), and third party legal malpractice, are collaterally estopped and may not be re-litigated in a civil proceeding.

Mr. Lisboa's claim for spoilation is also precluded by the doctrine of res judicata.  Mr. Lisboa knew of the alleged spoilation of the audio tapes before he pled guilty, and certainly before his time for a direct appeal had expired.  Further, this issue was raised in his post-conviction proceedings.  Mr. Lisboa clearly had reason to believe that the audio tapes that were used to substantiate the criminal charges against him may have been altered, as early as September 23, 2004, the day before his guilty plea.  Steve Cain, an expert hired by Mr. Lisboa's attorneys visited the Prosecutor's office on September 23, 2004 to review the audio tapes and to determine whether they had been altered.  (Def. Kleinman Motion to Dismiss Ex. A-5: Motion to Vacate Judgment, Affidavit of Steve Cain, ¶15-16, 19-22).  Subsequent examinations by Mr. Lisboa's expert took place after Mr. Lisboa's guilty plea, but before his time for a direct appeal had expired.  ((Def. Kleinman Motion to Dismiss Ex. A-5: Motion to Vacate Judgment, Affidavit of Steve Cain, ¶23).  Because Mr. Lisboa could have used this information in defense of the claims for which he pled guilty, because he could have raised this information in a direct

appeal, and because he did raise this information in his post-conviction proceedings, he cannot re-litigate this issue now in a civil action against the Defendants.

In so far as the spoilation claim is based on a claim that Mr. Kleinman, or someone at McDonald Hopkins altered a log book to remove Mr. Wilson's name from a list of visitors to the firm, there is no indication as to how this alteration, taken on its own, could have actually harmed Mr. Lisboa.  Despite the fact that he was aware that Mr. Wilson may have been hired by his wife and her lawyer to "set him up" (as evidenced by the allegations in his Motion to Dismiss Indictment), he voluntarily pled guilty to reduced charges.  It is inconceivable that he would have made a different decision merely because he knew that Mr. Wilson once logged in as a visitor at Mr. Kleinman's lawfirm.

This leaves only the claim for intentional infliction of emotional distress against Mrs. Arslanian.[5]  This claim, too, fails under the doctrine of res judicata and for lack of jurisdiction. If Mr. Lisboa believed that he was improperly deported, he could have appealed the INS decision through the proper appeals process. There is no indication in the record as to whether he actually did properly appeal the decision, however, either way he is estopped from addressing it in this forum.  If he did appeal the deportation, he obviously failed in his appeal and that decision is binding on this court.  If he failed to properly appeal he is procedurally barred from attacking the deportation decision via this civil action.  In addition, Mrs. Arslanian cannot, as a matter of law, be held responsible, for a decision made by the United States government through the INS.

---

[5] There are two additional claims listed in the Complaint, they are; a claim for respondeat superior, and a claim for negligent retention against McDonald Hopkins, LLC.  Because the underlying claims against Mr. Kleinman, the alleged employee, fail as a matter of law, the claims against the employer, McDonald Hopkins, must also fail.

Mrs. Arslanian did not deport Mr. Lisboa.  No matter what she may have said to Congressman LaTourette, or to the INS, it was the government's responsibility to assess the veracity of the charges against Mr. Lisboa, to determine whether he was deportable, and to decide whether or not to issue an order of removal.  Finally, 8 U.S.C. § 1252 subsections (2)(A), and © and subsection (5) strip this court of any jurisdiction to conduct any judicial review of Mr. Lisboa's order of removal.

<u>B.  Sufficiency of Claims</u>

As set forth above, each and every claim raised in Mr. Lisboa's Complaint is barred by the doctrine of res judicata.  However, even if Mr. Lisboa's claims were collaterally estopped, dismissal would be appropriate for failure to state a claim upon which relief can be granted. Because Mr. Lisboa's guilty plea has been conclusively determined to have been voluntary, and otherwise procedurally and Constutitionally sound, all of Mr. Lisboa's claims would fail for lack of causation.  Mr. Lisboa seeks redress for damages he allegedly suffered as a result of his conviction and deportation.   Assuming, as we must, that Mr. Lisboa's plea was valid, all of the damages he seeks were caused by the plea (and his corresponding admission to the amended charges).  As stated above, domestic violence, one of the crimes Mr. Lisboa admitted to, is a deportable offense.   Therefore, all of the damages sought in the Complaint were caused by Mr. Lisboa's plea and the consequential decision of the INS to have him permanently removed from the country, and not by the Defendants' alleged acts.  Mr. Lisboa, consequently, cannot satisfy the element of causation for any of his claims as a matter of law.

In addition, even if res judicata did not bar Mr. Lisboa's claims (which it does), and even if he could establish that his damages were proximately caused by the defendants' action (which

he cannot), the facts as alleged in the Complaint do not sufficiently state a claim for abuse of process, fraud, or third party malpractice.

      1.  <u>Abuse of Process:  Claims Two and Three (Kimberly Lisboa, Roger Kleinman)</u>

Under Ohio law there are three elements of the tort of abuse of process: (1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process. *Yaklevich v. Kemp, Schaeffer, & Rowe Co.*, 68 Ohio St. 3d 294 (Ohio 1994).  In order to prove a claim for abuse of process, therefore, a plaintiff must show that the defendant actually had probable cause to commence the process against the plaintiff.  When the allegations in the Complaint do not show that probable cause existed at the time the proceedings were initiated, Ohio courts regularly grant motions to dismiss.  *See, e.g.*, *Vitrano v. CWP Ltd. P'ship*, No. 19516, 1999 Ohio App. LEXIS 6179, at *10-11 (Summit Cty. Dec. 22, 1999); *Gunaris v. Holiday Lakes Prop. Owners Ass'n*,  No. H-98-032, 1999 Ohio App. LEXIS 404 at *9 (Huron Cty. Feb. 12, 1999); *Thompson Props., Inc. V. Seinsheimer*, No. C-850168, 1986 Ohio App. LEXIS 5601, at *7 (Hamilton Cty. Feb. 12, 1986).

Mr. Lisboa alleges in the Complaint that Kimberly Lisboa and  Mr. Kleinman conspired together to entrap him and create criminal charges against him, knowing that the charges were unsubstainated.  If, as Mr. Lisboa claims, these defendants knew that he did not commit the crimes for which he was charged, then they could not have had probable cause to initiate the criminal proceedings.  Since, according to Mr. Lisboa, they did not have probable cause to bring

-14-

the charges against him, this element of an abuse of process claim cannot be satisfied against

them as a matter of law.

Mr. Lisboa argues that the probable cause element is satisfied because the state and the

INS had probable cause to proceed against him based on the lies and misinformation they had

been provided.   Even if the state and the INS had probable cause to proceed, however, this does

nothing to save his abuse of process claim against Kimberly Lisboa and Mr. Kleinman.  An abuse

of process claim can only be maintained against a <u>defendant</u> who initiates a claim based on

probable cause.  *See*, *Aaron v. Venator Group*, No. E-03-001, 2003 Ohio App. LEXIS 4393, at

*8-9 (Erie Cty. Sept. 12, 2003).   It does not matter whether non-parties may have believed there

was cause to proceed against Mr. Lisboa.   Further, the Complaint also alleges that the police

(through undercover agent, Sergeant Dan Michalowsky) knew that he had not committed any

crime.  Therefore, according to Mr. Lisboa, not even the police department would have had

probable cause to pursue charges against him.[6]  Mr. Lisboa has not pled any facts that provide a

plausible basis to believe that he could establish the necessary element of probable cause in an

abuse of process claim.

---

[6]

  A claim of malicious prosecution might have better fit the facts as alleged in the
Complaint.  The elements of malicious prosecution are: "(1) malice in instituting or
continuing the prosecution, (2) lack of probable cause, and (3) termination of the
prosecution in favor of the accused." *Trussell v. General Motors Corp.*, 53 Ohio St. 3d 142,
559 N.E.2d 732, 736 (Ohio 1990).  However, such a claim is barred by the statute of
limitations.  There is a one year statute of limitations on malicious prosecution claims
which, in Mr. Lisboa's case, would have expired in 2005.  A claim of malcious prosecution
would also have required that Mr. Lisboa be found innocent of the crimes for which he was
accused.  This element is clearly also missing and any attack on the validity of his
conviction is barred by res judicata, as discussed above.

-15-

2.  Fraud:  Claims Four and Five (Kimberly Lisboa, Roger Kleinman)

In order to state a claim for fraud, a plaintiff must plead the following elements:

(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance.

*Groob v. Keybank*, 843 N.E.2d 1170, 1178 (Ohio 2006).    In order to be actionable, the representation at issue must be made to the plaintiff.  A plaintiff may not recover for fraudulent misrpresentations made to a third-party.  *See, Hines v. Amole*, 448 N.E.2d 473 (Ohio App. Greene Cty. 1982); *Hayes v. Computer Assocs. Int'l*, NO. 3:02 CV7452, 2003 U.S. Dist. LEXIS 10712, at * 17 (N.D. Ohio June 24, 2003).  Further, the element of justifiable reliance cannot be established if the plaintiff knew that the representation at issue was false.  *See*, *Herman v. Teplitz*, 148 N.E. 641 (Ohio 1925).  In this case, Mr. Lisboa alleges that Kimberly Lisboa and Roger Kleinman made fraudulent statements and concealments to the police, the prosecutor's office, the Court, and the INS.  (Complaint ¶¶ 129-130, 132, 137).   Mr. Lisboa cannot as a matter of law recover damages for fraudulent statements (or concealments) made to third-parties under these circumstances.

Mr. Lisboa also alleges that Kimberly Lisboa made fraudulent statements in her deposition.  Even if Ms. Lisboa's statements in deposition were construed as statements made Mr. Lisboa with the intent of misleading him, there is no possible way that Mr. Lisboa can claim justifiable reliance on such statements.  Clearly, Mr. Lisboa knew what he had and had not done in relation to the charges that were brought against him.  He could not have justifiably relied on statements made by Kimberly that he knew were false.

-16-

Finally Mr. Lisboa makes some general statements that Mr. Kleinman and Kimberly Lisboa concealed information from him and his lawyers.  (Complaint ¶¶ 128-143).  Mr. Lisboa claims that by concealing information about their alleged conspiracy they intended to prevent Mr. Lisboa from proving their involvement, thereby forcing him to admit to the amended charges set forth in his plea agreement.  Even assumming that Mr. Lisboa could establish that Kimberly and Mr. Kleinman had a duty to disclose their alleged conspiracy, he cannot establish justifiable reliance on their concealment of the conspiracy at the time of his guilty plea.  As reflected in the prior court proceedings, Mr. Lisboa was aware of the alleged conspiracy before he pled guilty to the amended charges.  Twenty-one days before his plea, Mr. Lisboa filed a Motion to Dismiss the criminal indictment.  (Def. Kleinman Motion to Dismiss Ex. A-2: Motion to Dismiss Indictment).  The Motion to Dismiss raised the affirmative defense of abandonment and set forth the same claims of conspiracy and "set up" that are raised in the instant action.  (Id.).   Therefore, Mr. Lisboa not only knew whether or not statements made by Kimberly and Mr. Kleinman were true or false, he was also aware of their alleged conspiracy before he pled guilty.  He cannot, therefore, have justifiably relied on any of the statements or concealments relating to the conspiracy when he pled guilty to the amended charges.

### 3.  Claim Nine: Third Party Legal Malpractice (Roger Kleinman)

To establish a case for legal malpractice one must prove three elements: (1) the attorney owed a duty; (2) there was a breach of that duty and the attorney failed to conform to the standard of care required by law; and (3) there was a causal connection between the conduct complained of and the resulting damage. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 427, 1997

-17-

Ohio 259, 674 N.E.2d 1164. If a plaintiff fails to establish a genuine issue of material fact as to any of the foregoing elements, the defendant is entitled to summary judgment on a legal malpractice claim. *Advanced Analytics Laboratories v. Kegler, Brown, Hill & Ritter*, 148 Ohio App.3d 440, 2002 Ohio 3328, at P34, 773 N.E.2d 1081.

In *Scholler v. Scholler*, 10 Ohio St.3d 98 (1984), this court recognized that attorneys have a qualified immunity from liability to third parties for acts or omissions concerning the representation of a client, holding at paragraph one of the syllabus that "[a]n attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts maliciously." *Id.* at paragraph one of the syllabus.  In *Simon v. Zipperstein*, 32 Ohio St.3d 74,76 (1987) the Ohio Supreme Court court reiterated its support for the holding in *Scholler*, explaining, "The rationale for this posture is clear: the obligation of an attorney is to direct his attention to the needs of the client, not to the needs of a third party not in privity with the client."

Mr. Lisboa claims that because he has alleged that Mr. Kleinman acted with malice, privity is not necessary to a third-party malpractice claim.  However, whether or not Mr. Lisboa fits an exception to the privity element of a malpractice claim, he still has not stated a claim for attorney malpractice.  In order for a malpractice claim to stand, the attorney must have owed a duty to the plaintiff and must have violated a standard of care within the realm of his or her legal practice.  Not every misdeed committed by an attorney can be the basis for a malpractice action, the misdeeds must be a part of his or her actual legal practice.  Otherwise they may constitute a tort of some kind, but they do not consitute attorney malpractice.  The misdeeds alleged by Mr.

Lisboa do not directly relate to any actual legal work done by Mr. Kleinman.

Mr. Lisboa claims that Mr. Kleinman participated in hiring Bill Wilson to set him up. This does not involve any legal work or proceeding.  Mr. Lisboa claims that Mr. Kleinman failed to disclose that Kimberly attempted to set Mr. Lisboa up.  If true, and if this was related to his legal representation of Mrs. Lisboa, then this is protected by attorney client privilege.  Mr. Kleinman did not owe a legal duty to Mr. Lisboa to reveal secrets or misdeeds of himself or of his client.  The closest Mr. Lisboa comes to making an allegation that involves Mr. Kleinman's actual legal work is an inference that he did something wrong by acting as an assistant to the attorney who prosecuted Mr. Lisboa's deportation hearing.  However, aside from some inference that being present at the hearing was improper, Mr. Lisboa's complaint does not allege any specific wrongdoing in the legal practices of Mr. Kleinman during those proceedings. Therefore, the Complaint does not state a proper cause of action for third-party attorney malpractice.

Finally, both Kimberly Lisboa and Sharon Arslanian have cited a settlement agreement between them and Mr. Lisboa claiming that it bars all of the claims he has now raised against them.  While it appears on its face that the settlement agreement would bar most if not all of the claims against Kimberly Lisboa, the enforcement of the settlement agreement would more properly be considered in a motion for summary judgment, therefore the terms of the agreement have not been considered in deciding the motions to dismiss filed by Kimberly Lisboa or Sharon Arslanian.


## **CONCLUSION**

For the reasons set forth above Defendants' Motions to Dismiss are GRANTED. (ECF #16,

20, 21).  Plaintiff's claims are barred by the doctrine of res judicata based on his guilty plea in the associated criminal action.  To hold otherwise would not only create a chilling effect on criminal complainants, but it would destroy the principle of finality which is necessary to the just and efficient administration of justice.  Further, allowing a convicted criminal, especially one who has been convicted based on his own admission and voluntary guilty plea, to pursue a civil action against the victim(s) of his crime defies every principle of  logic, justice and accountability upon which our judicial system has been built.  Plaintiff's Complaint is hereby dismissed with prejudice.  Kimberly Lisboa's request for sanctions is denied.  (ECF #20).  IT IS SO ORDERED.




   S/Donald C. Nugent      
DONALD C. NUGENT
United States District Judge


DATED:   December 4, 2007